**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

PEYTON HOPSON,

     Plaintiff,

vs.

MICHELLE BUMGARDNER,

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:23-cv-951

District Judge Algenon L. Marbley
Magistrate Judge Peter B. Silvain, Jr.

---

**REPORT AND RECOMMENDATIONS[1]**

---

Plaintiff Peyton Hopson, a state inmate who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983, alleging that Defendant Michelle Bumgardner denied him medical treatment in violation of the Eighth Amendment to the United States Constitution.  This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. #29), Plaintiff's Objections to Defendant's Motion (Doc. #38), Defendant's Reply (Doc. #40), and Plaintiff's Sur-Reply (Doc. #42).

**I.    BACKGROUND**

    **A.    Plaintiff's Complaint**

In his Complaint, Plaintiff alleges that on March 15, 2022, nursing staff assessed him for an injury to his right knee.  (Doc. #1, *PageID* #6).  The nursing staff provided Tylenol and ibuprofen, an ace bandage, and ordered x-rays.  *Id.*  According to Plaintiff, on June 9, 2022, before he received the x-ray results, his right knee popped while he was walking.  *Id.*  Plaintiff alleges that after sending two medical kites reporting that his knee popped and he was experiencing severe

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

pain, Defendant Nurse Bumgardner—without examining his knee or taking new x-rays—informed Plaintiff he had arthritis in his knee and provided him a knee sleeve as well as additional Tylenol and ibuprofen. *Id.* at 7, 11. According to Plaintiff, Defendant's assessment was based on the x-rays taken before his knee "popped (dislocated) out of place." *Id.* at 9. Although Plaintiff requested a cane and medical lay-in from work, Defendant denied his requests. *Id.* at 7, 11.

Plaintiff further alleges that he is Hepatitis C ("HCV") positive, and "HCV and Rheumatic Disease are well known to go hand in hand." *Id.* at 11. According to Plaintiff, on December 5, 2022, he "attempted to present medical information to [Defendant] from John Hopkins Hospital concerning the correlation between HCV and the bone and muscle damage to his knee." *Id.* at 12. However, Plaintiff alleges that Defendant became "agitated and irate" and called for additional medical staff "in an attempt to stage a scene that suggested that [Plaintiff] was somehow acting aggressively towards her by presenting medical research refuting her opinion that HCV has nothing to do with the bone and muscle damage of his knee." *Id.*

In sum, Plaintiff contends,

> [Defendant] left [him] with an unexamined dislocated knee; gave [him] a knee sleeve and painkillers; [] left [him] to deal with the severe pain of walking on a dislocated knee without the assistance of a cane to take pressure off the knee; and, left [him] subjected to the dangers [of] furthering the damage to his knee in the performance of vigorous physical labor on a dislocated knee as it was mandatory he performed his work detail duties in the food service working on his feet … for hours at a time daily.

*Id.* at 11. Plaintiff asserts that Defendant was deliberately indifferent to his serious medical needs in violation of the Eight Amendment. *Id.* at 7-8.

Plaintiff subsequently moved to amend his Complaint to adjust the amount of relief requested. (Doc. #14). The Court granted Plaintiff's Motion. (Doc. #31).

### B.    Medical Records

Medical records from the Ohio Department of Rehabilitation and Correction ("ODRC") show that on March 15, 2022, Plaintiff reported to Nurse Terry Keith that he injured his right knee while running to the commissary line.  (Doc. #29-3, *PageID* #263).  Nurse Keith, who is not identified as a defendant in this case, instructed Plaintiff to take acetaminophen and ibuprofen, rest, and ice the affected area.  *Id.*  Nurse Keith also applied an elastic bandage for compression. *Id.*

On June 9, 2022, Plaintiff saw Nurse Keith again for right knee pain.  *Id.* at 259.  Plaintiff reported that he was walking on the track and his knee popped.  *Id.* at 258.  Plaintiff indicated that since it popped, he experienced pain and swelling.  *Id.*  Nurse Keith ordered x-rays.  *Id.*

Plaintiff underwent x-rays of his right knee on June 14, 2022.  *Id.* at 255.  The x-rays revealed "Mild tricompartmental right knee arthrosis without radiographic evidence of an acute bony abnormality." *Id.*

On July 13, 2022, Plaintiff saw Defendant Bumgardner, Advanced Licensed Practitioner (ALP), for a follow up regarding the x-rays.  *Id.* at 248.  After reviewing the results with Plaintiff, Defendant instructed Plaintiff to wear a neoprene sleeve, rest, ice, and elevate his leg, take Tylenol or ibuprofen as needed for any pain or discomfort, and exercise as tolerated.  *Id.*

Plaintiff saw Defendant on October 24, 2022, for a chronic care follow up regarding his liver disease and fibroscan.  *Id.* at 232.  She noted that Plaintiff had full range of motion in all four extremities without obvious deformity.  *Id.*

On November 29, 2022, Plaintiff reported right knee pain to Nurse Audrey Jones, who is not a defendant in this case.  *Id.* at 226.  Nurse Jones noted that Plaintiff had no redness, swelling, bruising, or tenderness to palpation and Plaintiff's gait was steady.  *Id.* at 225.  Shortly thereafter,

3

on December 5, 2022, Plaintiff saw Defendant Bumgardner for a follow up regarding his right knee pain. *Id.* at 223. Plaintiff reported that he has had pain for five to six months and, when he walks, his "knee is critically unstable." *Id.* He also told Defendant that his knee instability is from his HCV, as it affects the joints. *Id.* Plaintiff requested to see a rheumatologist. *Id.* at 224. Defendant noted that upon physical examination, Plaintiff's right knee was stable, there was no crepitus or laxity, and he was able to perform a squat without difficulty. *Id.* at 223. Defendant instructed Plaintiff to continue using the knee sleeve, rest, ice, and elevate his knee, and take Tylenol and ibuprofen as needed. *Id.* at 224. She "offered theraband exercises," but Plaintiff "refused stating he has done this." *Id.* Defendant noted that she advised Plaintiff that "arthritis is also wear and tear and may not be related his hep C." *Id.* However, Plaintiff disagreed and reiterated that his knee is critically unstable. *Id.* Defendant indicated that Plaintiff "began getting frustrated stating this is from [h]is Hep C and he needs this fixed." *Id.* at 223. Plaintiff stated, "I will just have my people call Columbus." *Id.* at 224.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Additionally, this initial burden may be satisfied by the moving party "pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has

no evidence to support an essential element of his or her case." *Barnhart v. Pickrel Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Here, in opposing summary judgment, the non-moving party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Indeed, unverified pleadings and self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr*., 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, D.J.).

Finally, in ruling on a motion for summary judgment, the court is "not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. *See id*.

## III.    DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides a civil cause of action for persons "who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, 378 F.3d 566, 576 (6th Cir. 2004). In order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the

deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Further, because § 1983 is a method for vindicating federal rights as opposed to a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807 (1994).

In this case, Plaintiff alleges that Defendant violated his constitutional rights under the Eighth Amendment. In her Motion for Summary Judgment, Defendant asserts that there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. (Doc. #29, *PageID* #s 170-76). Additionally, Defendant contends that Plaintiff failed to exhaust the administrative remedies available to him. *Id.* at 176-81. Finally, Defendant argues that she is entitled to qualified immunity. *Id.* at 181-82. In support of her Motion, Defendant attached Plaintiff's medical records from ODRC. (Doc. #s 29-3, 29-4). Defendant also included the Declaration of Joseph Murphy, the Healthcare Administrator at Belmont Correctional Institution, who states that the medical records (Bates Stamped as DRC00001-000136; attached as Doc. #29-3) are the complete medical records for Plaintiff from October 19, 2020, through November 9, 2023.[2] (Doc. #29-2). Additionally, Defendant attached the Declaration of Karen Stanforth, an Assistant Chief Inspector at ODRC; the grievance and communication history by and between Plaintiff and prison officials for the period of time between March 1, 2022, and March 23, 2023; and a copy of Plaintiff's November 15, 2022 informal complaint, Notification of Grievance, appeal to the Chief Inspector, and the responses from prison officials. (Doc. #29-1).

---

[2] Defendant also attached records (Bates Stamped as DRC000137-DRC000310), which appear to the medical records for Plaintiff from February 17, 2015, through October 18, 2020. (Doc. #29-4).

A.      **Exhaustion of Administrative Remedies**

Defendant moves for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Doc. #29, *PageID* #s 176-80).  As failure to exhaust administrative remedies is "an affirmative defense under the PLRA[,]" Defendant bears the burden of proof on this issue. *Jones v. Bock*, 549 U.S. 201, 216, 127 S. Ct. 910 (2007); *see also Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) ("[T]he failure to exhaust 'must be established by the defendants.'") (quoting *Napier v. Laurel Cnty, Ky.* 636 F.3d 218, 225 (6th Cir. 2011)).  Thus, "[w]hen the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles*, 678 F.3d at 455-56); *see also Blissit v. Fiquiris*, 345 F. Supp. 3d 931 (S.D. Ohio 2018) (Graham, D.J.) (granting summary judgment based upon inmate's failure to comply with Ohio's grievance process for excessive force claim, discussing burden of proof).

The PLRA bars prisoners from filing federal lawsuits under 42 U.S.C. § 1983 "with respect to prison conditions … until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In discussing the applicability of the PLRA exhaustion requirement, the Supreme Court has made clear that it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983 (2002).  Further, such exhaustion is "mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.

In order "[t]o properly exhaust a claim, prisoners must tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review, and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90 (2006)).  Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules" so that the adjudicative system can function effectively. *Woodford*, 548 U.S. at 90-91.

Despite this, the PLRA only requires prisoners to exhaust all "available" administrative remedies.  42 U.S.C. § 1997e(a).  Thus, if the administrative remedy is considered unavailable, the requirement to exhaust may be excused.  As such, the Supreme Court has identified three situations where an administrative procedure is unavailable to prisoners and is therefore not subject to the exhaustion requirement: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake,* 578 U.S. 632, 643-44 (2016).

The procedure established for resolving inmate complaints in Ohio is a three-step process that is codified in Ohio Administrative Code ("O.A.C.") § 5120-9-31(J).  The first step requires inmates to submit an informal complaint resolution ("ICR") form to the supervisor of the department or staff member responsible for the issue within fourteen days of the complained-of event.  O.A.C. § 5120-9-31(J)(1).  "Informal complaints must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of

8

personnel involved and the name or names of any witnesses." O.A.C. § 5120-9-31(J). Within seven days of receiving the informal complaint, ODRC shall provide a written response that "reflect[s] an understanding of the inmate's complaint, [is] responsive to the issue, cite[s] any relevant departmental or institutional rules or policies and specif[ies] the action taken, if any." *Id*. at (J)(1). Any failure on the part of ODRC to provide such a response within the prescribed timeframe constitutes waiver and allows the inmate to proceed to step two of the grievance procedure. *Id*.

If the inmate is dissatisfied with the response to the ICR or the informal complaint process has been waived, the inmate may proceed to step two by filing a notification of grievance ("NOG") with the inspector of institutional services within fourteen days of the response or waiver of the informal complaint step. O.A.C. § 5120-9-31(J)(2). Thereafter, the inspector of institutional services has fourteen days to provide the inmate with a written response to the notification of grievance that "summarize[s] the inmate's complaint, describe[s] what steps were taken to investigate the complaint and the inspector of institutional service[s]'s findings and decision." *Id*. Upon notice to the inmate, the inspector of institutional services may extend the time to provide such a response by up to fourteen days. *Id*. However, if a response has not been provided within twenty-eight days from the receipt of the grievance, the inmate may proceed to step three of the grievance procedure. *Id*.

If the inmate is dissatisfied with the disposition at step two, the inmate may proceed to step three by submitting an appeal to the office of the chief inspector at ODRC within fourteen days of the date of the grievance disposition. O.A.C. § 5120-9-31(J)(3). "Only issues presented in an informal complaint or grievance may be raised in a grievance appeal. Grievance appeals shall contain a clear, concise statement explaining the basis for the appeal." *Id.* The chief inspector or

designee must provide a written response to the inmate within thirty days. *Id.* Decisions of the chief inspector are final, meaning that the O.A.C. provides no further means for appeal. *Id.* Additionally, "Grievance appeals concerning medical diagnosis or a specific course of treatment shall be investigated and responded to by a health care professional." *Id.*

As noted above, in support of her Motion for Summary Judgment, Defendant attached the Declaration of Karen Stanforth, an Assistant Chief Inspector at ODRC. (Doc. #29-1, *PageID* #s 185-87). In her Declaration, Ms. Stanforth stated that, as part of her job duties, she handles appeals to the ODRC Chief Inspector's Office from inmates as set forth in step three of the grievance procedure and is a records custodian of the records of such appeals and direct grievances from inmates. *Id.* at 185. Further, Ms. Stanforth reviewed Plaintiff's entire grievance and communication history and attested that during the period between March 1, 2022, and March 23, 2023, Plaintiff completed the three-step grievance process once, starting with the submission of an ICR on November 15, 2022. *Id.* at 186-87. Ms. Stanforth notes that although Plaintiff complained about the treatment and care of his Hepatitis C in his ICR and NOG, he did not mention his right knee pain or treatment by Defendant Bumgardner until his appeal to the Chief Inspector's Office on November 24, 2022. *Id.* at 197. However, even in his appeal, Plaintiff did not identify Defendant Bumgardner and complain about the treatment and care she provided. *Id.* Ms. Stanforth indicates that she attached a copy of the grievance and communication history by and between Plaintiff and prison officials for the period of time between March 1, 2022, and March 23, 2023 (Doc. #29-1, *PageID* #s 188-90); and a copy of Plaintiff's November 15, 2022 ICR, NOG, appeal to the Chief Inspector, and the responses from prison officials (Doc. #29-1, *PageID* #s 191-94).

A review of the documents attached to Ms. Stanforth's declaration reveals that Plaintiff submitted an ICR on November 15, 2022, against Warden David W. Gray regarding Warden

Gray's "deliberate indifference to Hopson's serious medical need of the standard treatment for Hepatitis C i.e. treatment without delay with direct anti-viral medications as established by the medical community." (Doc. #29-1, *PageID* #191).  Plaintiff indicates in the ICR that he "delivered additional papers to 3 House Case Manager Lucas for delivery to Inspector Haley for scanning into this electronic Informal Complaint."  *Id*.  However, the additional papers are not attached to the ICR received by the Court.  On November 18, 2022, Joseph Murphy responded to Plaintiff's ICR, indicating that based on Plaintiff's lab work and the "Inclusion Criteria," he found "no supporting evidence of non-compliance with policy and protocol in [Plaintiff's] care/treatment of [his] Hep. C condition."  *Id*.

On the same day, Plaintiff filed his NOG.  *Id*.  Plaintiff wrote:  "The standard of care as set forth in the AASLD [(American Association for the Study of Liver Diseases)] guidelines is treatment upon detection of the HCV virus.  ODRC protocol is not in compliance with the standards of the medical community."  *Id*.  Shortly thereafter, on November 21, 2022, Patrick Haley responded to Plaintiff's NOG.  *Id*.  He noted that Plaintiff stated that he received insufficient care for his Hepatitis C and his right knee.  *Id*.  However, Mr. Haley concluded that after review of Plaintiff's ICR, NOG, and medical records that "[t]he staff treating [Plaintiff] has performed their duties within the guidelines of their licensure and discretion."  *Id*. at 191-92.  Regarding Plaintiff's knee, Mr. Haley noted that Plaintiff was evaluated in March, June, and July 2022 and had imaging completed in June 2022.  *Id*. at 191.  Although Plaintiff was instructed to return to the clinic if he had continued concerns, Plaintiff did not submit any further health services requests after his ALP evaluation.  *Id*.  Mr. Haley concluded that "Medical evaluation and treatment have been provided per medical policy 68-MED-01, 68-MED-04 and the subsequent protocols."  *Id*.

On November 24, 2022, Plaintiff appealed his grievance disposition. *Id.* at 192.  Regarding

his Hepatitis C, Plaintiff noted that the "American Association for the study of Liver Disease

jointly with the Infectious Disease Society set the community standards for the treatment of HCV

i.e., treatment without delay, post liver scarring, for all with acute or chronic H[CV] infection."

*Id.*  Concerning his knee injury, Plaintiff indicated that when a knee pops, it is an indication of a

dislocated knee.  *Id.*  According to Plaintiff, the standard of care requires an x-ray or MRI to

determine whether the knee cap broke or if there is damage to the cartilage or ligaments.  *Id.*

Further, if there is damage, the injury may require surgery or to be placed in a cast or brace.  *Id.*

Plaintiff asserted that with both his HCV and knee, the standard minimal care was not provided.

*Id.*  On December 27, 2022, Ms. Stanforth responded to Plaintiff's appeal, affirming the prior

decisions.  *Id.*

In her Motion for Summary Judgment, Defendant asserts that Plaintiff failed to exhaust his

administrative remedies for two reasons.  First, Defendant contends that Plaintiff's November 15,

2022 ICR was untimely as it applies to Defendant because the ICR was submitted four months

after Defendant saw Plaintiff about his right knee.  (Doc. #29, *PageID* #s 179-80).  Moreover,

Defendant's December 5, 2022 consultation with Plaintiff occurred after he submitted his appeal.

*Id.* at 180.  Second, Defendant contends that Plaintiff failed to specifically mention his complaints

about Defendant or the treatment of his right knee in the November 15, 2022 ICR.  *Id.* at 180-81.

However, as Plaintiff correctly points out, although Defendant included a copy of

Plaintiff's ICR, NOG, appeal, and prison officials' responses, Defendant did not include Plaintiff's

attachments.  *See* Doc. #29-1, *PageID* #191-93.  Not only does Plaintiff indicate in his ICR that

he delivered papers to be scanned for his complaint, the "Admin Log" shows that six files were

attached on November 17, 2022, and Plaintiff's "info for appeal" was attached on December 13,

2022. (Doc. #29-1, *PageID* #193). However, none of these documents are attached to Defendant's

Motion. This is particularly relevant in this case because, although Plaintiff did not specifically

mention his right knee problems in either his ICR or NOG, Mr. Haley responded, "In your

grievance you state that you received insufficient care for your Hep C and your right knee." *Id.* at

191. This suggests that information regarding Plaintiff's knee could have been included in his

attachments. Accordingly, because Defendant has not presented any evidence as to what was

included in Plaintiff's attachments to his November 15, 2022 ICR, the undersigned finds that the

record is incomplete and no decision on exhaustion can be reached as to Defendant's treatment of

Plaintiff on July 13, 2022.[3]

However, to the extent that Plaintiff brings a claim against Defendant related specifically

to his December 5, 2022 consultation, Plaintiff failed to exhaust his administrative remedies.

Plaintiff did not file an ICR related to that appointment. Although Plaintiff notes that he sent a

kite regarding Defendant's conduct, (Doc. #38-3, *PageID* #563), even if Plaintiff's kite is

considered to be an ICR, Plaintiff failed to follow steps two and three of the three-step grievance

process set forth in O.A.C. § 5120-9-31(J). Further, there is no evidence that the grievance

procedure was rendered unavailable to him. Accordingly, the undersigned finds that Plaintiff

failed to exhaust his administrative remedies with respect to any claim arising out of the December

5, 2022 appointment with Defendant. For these reasons, the undersigned **RECOMMENDS** that

Defendant's Motion for Summary Judgment on administrative exhaustion of Plaintiff's December

5, 2022 consultation with Defendant be **GRANTED**.

---

[3] Although Plaintiff's ICR appears to be untimely (as it was filed more than fourteen days after his consultation with Defendant), when prison officials waive enforcement of a procedural rule and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with a rule will not bar that prisoner's subsequent federal lawsuit. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). Here, to the extent that Plaintiff's attachments reference treatment of his knee, the prison officials responded to Plaintiff's complaints on the merits, rather than finding his complaint untimely.

### B.      Deliberate Indifference

Defendant also asserts that she is entitled to summary judgment because "[t]here is no evidence or material facts before the Court wherein [Plaintiff] can establish either element of his deliberate indifference claim." (Doc. #29, *PageID* #183).

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration.'  But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285 (1976)).  To establish a violation of his Eighth Amendment right resulting from a denial of medical care, Plaintiff must show that prison officials acted with "deliberate indifference to [his] serious medical needs."  *Estelle,* 429 U.S. at 104; *Brooks v. Celeste,* 39 F.3d 125, 127 (6th Cir. 1994).  A constitutional claim for denial of medical care has objective and subjective components.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994); *Napier v. Madison Cnty.,* 238 F.3d 739, 742 (6th Cir. 2001).

The objective component requires the existence of a "sufficiently serious" medical need. *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970; *Estelle*, 429 U.S. at 104, 97 S.Ct. 285).  A medical need is "sufficiently serious" if it either "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta,* 561 F. App'x 497, 499 (6th Cir. 2014) (quoting *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008)).  When an inmate has a medical need that has been diagnosed by a physician as mandating treatment, "the plaintiff can establish the objective component by showing that the prison failed to provide treatment, *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)), or that it provided treatment 'so cursory as to amount

14

to no treatment at all[.]'" *Rhinehart*, 894 F.3d at 737 (quoting *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009)). However, when an inmate has received ongoing treatment for his condition and claims that the treatment was inadequate, the objective component requires a showing of care "'so grossly incompetent' or so grossly 'inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 534-35 (6th Cir. 2021) (quoting *Rhinehart*, 894 F.3d at 737). "The plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment." *Rhinehart*, 894 F.3d at 737. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately... the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." (internal quotation marks and citation omitted)).

The subjective component requires an inmate to show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Gunther*, 561 F. App'x at 500 (quoting *Harrison*, 539 F.3d at 518). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cnty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994). In sum, to prove the subjective component, the plaintiff must show that the official: (a) subjectively knew of a risk to the prisoner's health: (b) drew the inference that a substantial risk of harm to the prisoner existed; and (c) consciously disregarded that risk. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

15

In this case, the parties both acknowledge that Plaintiff has right knee pain.  (Doc. #38, *PageID* #534); (Doc. #29, *PageID* #172).  They also recognize, and the medical records show, that Plaintiff has obtained treatment—including examinations, an x-ray, a knee sleeve, and over-the-counter pain medications—for his right knee pain.  *See* Doc. #29-3, *PageID* #s 223-24, 248, 255.  However, Plaintiff challenges the adequacy of the care he received, insisting that there is a link between his right knee pain and HCV that mandates referral to a specialist.  (Doc. #38, *PageID* #s 535-37).  In support, Plaintiff attached a fact sheet on "HCV and Rheumatic Disease" from the American College of Rheumatology.  (Doc. #38-2).  He contends the fact sheet "establishes the community standard for the treatment of HCV-related diseases[,]" and constitutes "verifying medical evidence" supporting his argument that Defendant provided grossly inadequate medical care.  (Doc. #38, *PageID* #535).

Although Plaintiff asserts that Defendant should have referred him to a specialist for treatment of his right knee condition, (Doc. #38, *PageID* #537), Plaintiff's "desire for additional or different treatment does not by itself suffice to support an Eighth Amendment claim."  *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017) (citing *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'")); *see also Robinson v. Knack*, No. 2:18-CV-9, 2019 WL 5275531, at *3 (W.D. Mich. Aug. 26, 2019), *report and recommendation adopted,* 2019 WL 4743864 (W.D. Mich. Sept. 30, 2019) (citing *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996)) ("[D]ifferences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference

claim."). Moreover, when a plaintiff claims that he was denied or delayed in receiving a *specific* type of medical treatment, the Sixth Circuit has held that the plaintiff "must present a medical expert who can speak to the necessity of such a treatment and evaluate it vis-à-vis the treatment he received." *Anthony*, 701 F. App'x at 464; *see Blosser v. Gilbert,* 422 F. App'x 453, 460 (6th Cir. 2011).

Here, Plaintiff failed to provide expert medical testimony—either in the form of an affidavit or through depositions—showing either the medical necessity of seeing a specialist or the detrimental effect of his alleged inadequate treatment. *See Phillips*, 14 F.4th at 536 (citations omitted) ("[The plaintiff] needed to present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so."). Plaintiff's failure to present such evidence means that he cannot satisfy the objective component of his deliberate indifference claim. *Blosser,* 422 F. App'x at 460; *Anthony*, 701 F. App'x at 464.

Contrary to Plaintiff's argument that his claim is similar to that of the plaintiff in *Chibbaro v. Everett*, 2022 WL 4299715 (M.D. Tenn. Sept. 19, 2022), there are significant differences between the two. In *Chibbaro*, the court found that the medical documentation showed that the plaintiff had an intolerance to an antibiotic medication, the defendant prescribed that medication, the plaintiff experienced a reaction, and, after the defendant refused to treat the plaintiff, another individual prescribed medication for the symptoms attributable to that reaction. *Id.* at *4. The court concluded that the medical documentation, combined with the plaintiff's account of her experience, was sufficient to permit the inference that her condition was serious enough to give rise to liability. *Id.* In contrast, in this case, the medical record shows that Plaintiff has right knee arthrosis (Doc. #29-3, *PageID* #255), and Defendant provided treatment, including examinations, an x-ray, a knee sleeve, and over-the-counter pain medications. (Doc. #29-3, *PageID* #s 223-24,

17

248, 255). The medical record also shows that Plaintiff has HCV. *Id.* at 198. However, the medical record does not establish that Plaintiff's right knee pain is caused by or has any connection to his HCV, nor does it show the medical necessity of seeing a specialist or any alleged detrimental effects of Defendant's treatment. Given the complexity of Plaintiff's diagnoses and his allegations regarding the connection between the two, the Court "lacks the requisite medical expertise to properly evaluate whether [Plaintiff's] claim has merit." *Anthony*, 701 F. App'x at 464. Therefore, to succeed on his claim, Plaintiff must present a medical expert who can speak to the necessity of a referral to a specialist and detrimental effect of Defendant's treatment. Plaintiff has not presented any such medical testimony. Accordingly, Defendant is entitled to judgment as a matter of law.[4]

It is therefore **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**.

### C. Qualified Immunity

Defendant also contends that he is entitled to summary judgment on the issue of qualified immunity for Plaintiff's claims of deliberate indifference. (Doc. #29, *PageID* #s 181-82). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). In so doing, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009).

---

[4] As Plaintiff is unable to prove the objective component of his claim, this Court need not consider the subjective component of his claim. *Phillips*, 14 F.4th at 535 ("Only if a prisoner proves this objective element must courts consider the second (subjective) part of the deliberate-indifference test.").

A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009).  Additionally, while a defendant bears the initial burden of pleading the defense of qualified immunity, it is the plaintiff who "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity."  *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (quoting *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005)).

Defendant maintains that she is entitled to qualified immunity on Plaintiff's claim.  (Doc. #29, *PageID* #182).  Thus, the burden shifts to Plaintiff to establish that Defendant is not entitled to this defense.  However, as explained above, Plaintiff has failed to demonstrate that his constitutional rights have been violated, even when viewed in the light most favorable to him.  As such, Plaintiff is unable to carry his burden to show that Defendant is not entitled to qualified immunity.

Accordingly, the undersigned **RECOMMENDS** that the Court find that Defendant is immune from Plaintiff's deliberate indifference claim.

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant's Motion for Summary Judgment (Doc. #29) be **GRANTED**.

January 15, 2025                                      *s/Peter B. Silvain, Jr.*
                                                     Peter B. Silvain, Jr.
                                                     United States Magistrate Judge

19

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).